UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-13(1)(JMR/ESS)
Civil No. 05-482(JMR)

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. KEITH BERNARD CRENSHAW, Defendant. | OPPOSITION OF THE UNITED STATES TO CRENSHAW'S PETITION UNDER 28 U.S.C. § 2255 |

Following a jury trial in 2002, defendant Keith Bernard Crenshaw was convicted of murder in aid of racketeering activity based on his participation in the shooting death of four-year-old Davisha Gillum. His conviction and sentence were affirmed on direct appeal. United States v. Crenshaw, 359 F.3d 977 (8th Cir. 2004).

Crenshaw has filed a section 2255 petition in which he claims (1) that the evidence was insufficient to support his conviction; (2) that his Sixth Amendment right to confront Roosevelt Sanders was violated even though Sanders was neither a witness against him nor were any out-of-court statements by Sanders admitted at trial; (3) that his lawyers were ineffective for not calling Sanders as a witness; and (4) that his lawyers were ineffective for not challenging the government's evidence that Crenshaw and Sanders were confined together for several months prior to the murder. As shown

below, there is no merit to any of these claims, some of which are not properly before the Court. Crenshaw's petition should be summarily denied. No evidentiary hearing is warranted.

STATEMENT OF FACTS

On July 20, 1996, defendants Keith Bernard Crenshaw, Timothy Kevin McGruder, and Kamil Hakeem Johnson, all of whom were members or associates of the Rolling 60's Crips street gang, were on a mission to kill members of a rival gang known as the Bogus Boys. T. 344-47, 494. At approximately 10:45 p.m., they spotted some Bogus Boys at an Amoco gas station in St. Paul, Minnesota. They had their getaway driver, Maalik Harut, drop them off a block away. T. 347-48.

Crenshaw, McGruder, and Johnson then proceeded on foot to an alley that was separated from the Amoco station by a six-foot wooden fence. Each of the three defendants had a gun. T. 94, 345. The three of them got up on a guard rail and began shooting over the fence into the gas station parking area where at least 7 Bogus Boys were congregated. E.g., T. 149, 251, 834.

The defendants concentrated their fire on a particular blue Cadillac that was parked at the air hose about 30 feet in front of them. T. 279-80, 834. This car belonged to the

girlfriend of one of the Bogus Boys. T. 164, 244-45. That night, the car contained only women and children, including four-year-old Davisha Gillum and her mother, who were getting a ride home after attending the Rondo Days neighborhood celebration in St. Paul. T. 166-71. At least 20 shots rang out. T. 282-83. When the shooting stopped, Davisha's mother and two other adult women from the blue Cadillac lay wounded. T. 252-53. Four-year-old Davisha lay dying in her mother's arms with a bullet hole through her forehead. T. 175, 934. None of the Bogus Boys had been hit.

Crenshaw, McGruder, and Johnson ran back to the waiting getaway car driven by Maalik Harut. T. 348-49. They then sought out the leaders of the Rolling 60's Crips gang in order to inform them that they had just shot at the Bogus Boys. E.g., T. 350-51, 607-09. This was an important part of their mission because the shooting was a gang-ordered hit. T. 587, 680-81. The Rolling 60's Crips and the Bogus Boys had been in a gang war for at least the previous year. T. 595-600. It had escalated months earlier when the Bogus Boys shot and wounded a Rolling 60's member named Richard Smaller. T. 598-99, 769-70. As a result of the ongoing gang warfare, the head of the Rolling 60's Crips, Terron "Rico" Williams, repeatedly

had ordered all his gang members to shoot any Bogus Boys on sight. T. 587, 681, 340. Crenshaw, McGruder, and Johnson were carrying out his orders when they shot at the Bogus Boys, missed, and killed Davisha Gillum. T. 681.

Within minutes after the murder, Crenshaw, McGruder, and Johnson found "Rico" Williams and bragged to him about having just shot at the Bogus Boys at the Amoco station. T. 607-09. After bragging to "Rico" Williams, the three defendants continued to brag to other members and associates of the Rolling 60's gang. T. 832-34, 952-59, 1064. McGruder, whose street name is "Handyman," was disappointed because his gun jammed during the shooting, T. 834, 953, 1064, a fact later borne out by ballistics evidence. T. 299-301. When the three defendants found out the next day from news reports that they had killed an innocent four-year-old girl, they stopped bragging. T. 610-12; see also T. 836.

Eyewitnesses at and near the Amoco station described the shooters as three young black males, one of whom was very light- skinned. T. 94, 149. McGruder and Johnson are black males. Crenshaw, whose street name is "Chumley," is a very light-skinned black male. See T. VII at 37. Photospreads of potential suspects were shown to eyewitnesses. The

defendants' pictures were not in the initial photospreads because they had not yet been identified as suspects. T. 189, 201-02. Two witnesses picked out photos of people they thought most closely resembled one of the shooters. Those photographs are of people who closely resemble defendant McGruder. See T. 125-30.

From bullet casings and bullet fragments found at the Amoco station, investigators were able to determine that at least 20 shots were fired from behind the fence. T. 282-83. There was no evidence of any return fire. T. 285. Casings from two different guns were found at the scene. T. 299-301. A ballistics expert testified that one set of casings was fired from a particular type of 9 millimeter pistol manufactured by Heckler & Koch, which is a very rare gun. T. 306-10, 316. The Heckler & Koch pistol had fired Black Talon bullets, a type of ammunition that was banned in 1993 and would have been rather scarce by July 1996. T. 318-19, 512. The bullet that killed Davisha Gillum was, in all probability, a Black Talon bullet. T. 275, 307, 325-26. Defendant Kamil Johnson's girlfriend in 1996 owned a Heckler & Koch 9 millimeter pistol and Kamil Johnson had access to it. T. 523-25. The girlfriend testified that she noticed the gun was

missing in late 1996, T. 525-26, which was not long after Davisha Gillum's murder. She never saw it again. See T. 526. Although the gun itself was never found, when investigators searched the girlfriend's apartment in 2002, they found boxes of Black Talon ammunition identical to the expended bullets found at the murder scene. T. 1193-94.

Despite early leads pointing to the Rolling 60's gang as the perpetrators of the crime, T. 203-04, 238, local homicide investigators were not able to develop a provable case. Although the shooters had bragged about the crime to several fellow gang members and associates, the gang had a rigidly enforced code of silence. T. 587-88, 819, 916-17. Anyone who cooperated with the police would be severely punished or even killed. T. 588. No one involved with the gang came forward.

Eventually the investigation was taken over by the FBI Drug Task Force. T. 1179-80. Over the next several years, investigators focused their energies on developing a drug case against the leadership of the Rolling 60's Crips gang, including Terron "Rico" Williams and his younger brother Greg Hymes. In late 2001, a federal indictment was returned charging "Rico" Williams, Greg Hymes, and another high-ranking member of the Rolling 60's Crips with federal drug trafficking

offenses, including an interstate cocaine trafficking conspiracy spanning 10 years. T. 533-34, 809.

On the very day "Rico" Williams was arrested on the federal drug indictment, he agreed to cooperate with law enforcement in solving the Davisha Gillum murder. T. 614-15. On the day of his arrest, he named the three shooters -- defendants Keith Crenshaw ("Chumley"), Timothy McGruder ("Handyman"), and Kamil Johnson ("Little T-Bone") -- as well as the getaway driver, Maalik Harut. Id.

Investigators then approached Harut. When confronted, Harut immediately confessed that he had been the getaway driver on the night in question. T. 353-54, 1184. He also named Crenshaw, McGruder, and Johnson as the three shooters. Id.

Both "Rico" Williams and Maalik Harut testified against Crenshaw, McGruder, and Johnson at trial pursuant to cooperation plea agreements. Greg Hymes also pleaded guilty and testified against them pursuant to a cooperation plea agreement.[1] The testimony of these three witnesses was corroborated by two other non-defendant witnesses who

[1]Williams and Hymes pleaded guilty to federal drug trafficking charges. T. 533, 809. Harut pleaded guilty to conspiracy to commit murder in aid of racketeering activity for his role as the getaway driver. T. 328.

overheard Crenshaw, McGruder, and Johnson bragging about the shooting immediately after it occurred. T. 952-56, 1064. The government also presented essentially unchallenged evidence that the Rolling 60's Crips gang constitutes a racketeering enterprise affecting interstate commerce as defined under the relevant statute, and that the perpetrators acted with the requisite motive of gaining entrance to or maintaining or increasing their position in the gang.

After a two-week trial, the jury found all three defendants guilty of the single count of murder in aid of racketeering activity. This Court sentenced each of them to the statutorily prescribed penalty of life imprisonment. The convictions and sentences were affirmed on direct appeal. United States v. Crenshaw, 359 F.3d 977 (8th Cir. 2004).

## ARGUMENT

### I. CRENSHAW'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE WAS RAISED AND REJECTED ON DIRECT APPEAL; HE MAY NOT RELITIGATE THE ISSUE IN A SECTION 2255 PETITION

Crenshaw first claims that the evidence was insufficient to support his conviction. He does not challenge the government's evidence that he was involved in the fatal shooting. Rather, he simply claims that the government did not sufficiently prove that he acted with the requisite motive

to gain entrance to or to maintain or increase his position in the Rolling 60's Crips Gang.

Crenshaw raised the same challenge to the sufficiency of the evidence on direct appeal. Attached as Exhibit 1 are the relevant pages of Crenshaw's appeal brief. The Eighth Circuit ruled against him. United States v. Crenshaw, 359 F.3d 997, 995-96 (8th Cir. 2004).

The law is clear that issues raised on direct appeal may not be relitigated in a section 2255 petition. E.g., English v. United States, 998 F.2d 609, 612-13 (8th Cir. 1993); see also Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993). Accordingly, Crenshaw's insufficiency of the evidence claim should be summarily denied.

Alternatively, the evidence was more than sufficient to show that Crenshaw acted with the requisite motive. Crenshaw was not yet a full-fledged member of the Rolling 60's at the time of the murder but was a close associate. T. 549. He did not need to be a member in order to be liable under section 1959. United States v. Rolett, 151 F.3d 787, 790 (8th Cir. 1998) ("it was not necessary [under section 1959] to prove that appellant was himself a part of the enterprise engaged in racketeering activity"). Section 1959 reaches those who

commit murder in order to get into a gang, as well as those who do it to maintain or increase their position in the gang. 18 U.S.C. § 1959(a). Crenshaw had been a member of two other gangs previously: the 187 gang and the ABK gang. T. 549, 564. "187" is the California penal code section for murder. T. 549. ABK stands for "Anybody Killer." T. 564.

Just prior to the murder, Crenshaw had met Roosevelt Sanders, one of the senior members of the Rolling 60's Crips, while the two of them were in prison together. T. 582-84, 638. When Crenshaw and Sanders got out of prison, Crenshaw began hanging around with the Rolling 60's gang "all the time." T. 549. On the same night that Crenshaw shot at the Bogus Boys from behind the Amoco station, Sanders shot at the Bogus Boys at a different location. T. 827-29. From these facts, the jury reasonably could infer that Crenshaw was motivated, at least in part, to participate in the war against the Bogus Boys in order to impress the leaders of the Rolling 60's and thereby gain acceptance into that gang. Like everyone else involved in the Rolling 60's, Crenshaw participated because it was expected of him.

The best evidence that all three defendants acted with the requisite motive of gaining entrance to or maintaining or

increasing their position in the gang is that, immediately following the shooting, they all sought out the leaders of the Rolling 60's gang in order to inform them of the news. T. 350-51, 608-09, 834-37. They bragged about the shooting to people in the gang who mattered because they wanted to make sure they would get "stripes" for committing violence on behalf of the gang. See T. 585.

Even if it could be shown that Crenshaw did not act with the requisite motive, which is not the case, that would not entitle him to relief. So long as at least one of the participants acted with the requisite motive, any defendant who aided and abetted the crime is liable under section 1959 as well. Eighth Circuit Manual of Model Jury Instructions § 5.01; United States v. Concepcion, 983 F.2d 369, 383-84 (2d Cir. 1992).

All three defendants aided and abetted each other when they proceeded as a group to the fence behind the Amoco station and opened fire. It is unlikely that any one of them would have tried to ambush two carloads of Bogus Boys by himself. They needed each other to accomplish their mission. It is no defense that they missed the Bogus Boys and killed an innocent four-year-old girl instead. The intent to kill the

Bogus Boys transfers to the actual victim who died. Concepcion, 983 F.2d at 381-82.

## II. CRENSHAW WAS NOT DENIED HIS RIGHT TO CONFRONT ROOSEVELT SANDERS, AND HIS LAWYERS WERE NOT INEFFECTIVE FOR FAILING TO CALL SANDERS AS A WITNESS

Crenshaw next contends his Sixth Amendment right to confrontation was denied because Roosevelt Sanders did not testify at trial. This claim could have been, but was not, raised on direct appeal. Accordingly, Crenshaw may not raise it in a section 2255 petition. E.g., Reid v. United States, 976 F.2d 446, 447 (8th Cir. 1992) (section 2255 is not a substitute for direct appeal); Ford v. United States, 983 F.2d 897, 898-99 (8th Cir. 1993) (per curiam) (claims which could have been raised on direct appeal will not be considered in a section 2255 proceeding absent cause and substantial, actual prejudice).

Even if the claim properly were before the Court, it should be denied on the merits. Crenshaw misunderstands the nature of the Sixth Amendment right to confrontation. A defendant has the right to confront any witness who gives "testimonial" evidence against him. E.g., Crawford v. Washington, 124 S. Ct. 1354, 1374 (2004). This means that, if the government seeks to introduce an out-of-court

"testimonial" statement against a defendant at trial, it may not do so unless the declarant is unavailable at trial and was previously subject to cross-examination. Id. On the other hand, non-testimonial statements, such as co-conspirator statements, are exempt from these requirements. E.g., United States v. Reyes, 362 F.3d 536, 540-41 (8th Cir. 2004).

In the present case, the government did not introduce any out-of-court statements of Roosevelt Sanders against Crenshaw (or anybody else) at trial. Rather, the government simply showed that Sanders was a member of the Rolling 60's Crips Gang and that Sanders and Crenshaw had been incarcerated together for several months not long before the murder of Davisha Gillum. From this and other evidence, the jury could have inferred that Sanders recruited Crenshaw to join the Rolling 60's Gang, but no statements of Sanders to that effect were offered or admitted. Accordingly, Crenshaw's confrontation rights were not violated.

In a related vein, Crenshaw contends his trial lawyers, Seamus Mahoney and James Ostgard, were ineffective for not calling Sanders as a witness at trial. Petition at 17. He claims that Sanders would have testified that he and Crenshaw "had no relationship that would have allowed a jury to

conclude or infer that [Crenshaw] had a [sic] economic tie to the Rolling 60's Crips . . ..” Id. But Crenshaw offers no affidavit or other evidence in support of his claim that Sanders would have so testified. This is fatal to his claim. Bald assertions that a witness would have exculpated a defendant are insufficient to warrant relief. United States v. Delgado, 162 F.3d 981, 983 (8th Cir. 1998). They do not even trigger the need for an evidentiary hearing. Id.; see also Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

Furthermore, it is quite unlikely that Roosevelt Sanders would have testified on Crenshaw’s behalf in any event. The evidence at trial established that, on the night of the murder, Sanders himself shot at some Bogus Boys at a different location. T. 827-29. More than likely, Sanders would have invoked the Fifth Amendment and refused to testify had Crenshaw subpoenaed him.[2]

[2]The undersigned solicited an affidavit from Crenshaw’s trial attorneys regarding Crenshaw’s claim that they should have called Sanders as a witness at trial, (attachment 2), but received no response.

## III. THE GOVERNMENT'S EVIDENCE THAT CRENSHAW AND ROOSEVELT SANDERS WERE CONFINED TOGETHER FOR A PERIOD OF MONTHS PRIOR TO THE MURDER WAS NOT FALSE

At trial, the government showed that Crenshaw and Rolling 60's member Roosevelt Sanders were confined together at the Minnesota Correctional Facility at Faribault from December 6, 1995 until March 28, 1996. See Government Trial Exhibit 41 (attached as Exhibit 3); T. 1196-1200. Crenshaw claims that the government's evidence is false and that his lawyers were ineffective in not establishing the alleged falsity.

Crenshaw has failed to offer any evidence that the government's records of Crenshaw's and Sanders' confinement at MCF Faribault are inaccurate. The only thing Crenshaw offers is an unsworn e-mail apparently from a private investigator in California. The information in that e-mail actually is consistent with the government's record of Sanders' confinement status as far as it goes. Both Government Exhibit 41 and the e-mail show that Sanders' went into state custody at MCF Lino Lakes on 8/7/95. They both show that he was released from custody on June 17, 1996. However the e-mail simply omits what happened in between. As Government Exhibit 41 shows, Sanders was transferred out of Lino Lakes on 8/8/95, spent the next four months in Stillwater, and then was

transferred to MCF Faribault on December 6, 1995, where Crenshaw was also housed. Crenshaw's unsworn e-mail conveniently omits these transfers, thereby giving the false impression that Sanders stayed in Lino Lakes the whole time. Since Crenshaw has offered no official records to contradict the government's evidence, but only an unsworn, incomplete summary of the government's records, his claim is insufficient on its face and should be summarily denied.[3]

CONCLUSION

Crenshaw's claims either are not properly before the Court or are lacking in factual support, or both. Accordingly, his petition should be summarily denied. No evidentiary hearing is warranted.

Respectfully submitted,

Dated: May 9, 2005

THOMAS B. HEFFELFINGER
United States Attorney

s/Jeffrey S. Paulsen
BY: JEFFREY S. PAULSEN
Assistant U.S. Attorney
Attorney ID Number 144332

[3]Notably, although Crenshaw filed a declaration along with his petition, Crenshaw does not deny that he was locked up in MCF Faribault with Sanders during the relevant time period. Nor did he deny it at trial.