```
         UNITED STATES DISTRICT COURT
            DISTRICT OF MINNESOTA
              02-CR-13(JMR/ESS)
              05-CV-482(JMR/JSM)
```

United States of America          )
                                  )
         v.                       )     ORDER
                                  )
Keith Bernard Crenshaw            )

Petitioner moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. For the reasons set forth herein, the motion is denied.

## I. Background

Mr. Crenshaw was imprisoned in late 1995 and early 1996 on a sentence unrelated to this petition. He had previously been a member of the "187" gang (the California penal code section for murder) and the "ABK" gang (for "anybody killer"). While incarcerated, Mr. Crenshaw met fellow inmate Roosevelt Sanders, a senior member of the gang named Rolling 60s Crips (the "Crips").

Upon his release from prison on June 17, 1996, Mr. Crenshaw spent time with Mr. Sanders and members of the Rolling 60s Crips. The Crips had been engaged in a gang war with a St. Paul rival gang called the Bogus Boys. As a result, the head of the Rolling 60s Crips, Terron "Rico" Williams, ordered his gang members to shoot members of the Bogus Boys on sight.

On the night of July 20, 1996, Mr. Crenshaw and his two codefendants, Timothy Kevin McGruder and Kamil Hakeem Johnson, while driving around, thought they saw several Bogus Boys at a gas

station in St. Paul.  They were dropped off a block away by their driver, Maalik Harut, and approached the gas station on foot from a nearby alley.  They fired their weapons over the alley's six-foot wooden fence into the gas station parking area where they believed the Bogus Boys to be.  McGruder's gun jammed, but Crenshaw and Johnson fired at least 20 rounds, targeting a car belonging to a girlfriend of one of the Bogus Boys.  There was no return fire.  The shooting left three women wounded, and Davisha Gillum, a four-year-old girl, dead.

Mr. Crenshaw and his two companions ran back to the waiting car.  They immediately sought out "Rico" Williams to tell him of the events.  All three defendants bragged about the shooting to other Crips members and associates until they learned the following day that they had killed an innocent four-year-old child.

Eyewitnesses described the shooters as three young black males, one of whom was very light-skinned.  All three defendants are black; Mr. Crenshaw is very light-skinned.  Bullet casings recovered at the scene pointed to a rare Heckler & Koch pistol and illegal Black Talon ammunition. Defendant Johnson's girlfriend had both a Heckler & Koch pistol and Black Talon bullets prior to the shooting.  Despite these and other leads suggesting the involvement of the Crips, investigators were unable to develop a triable case of Davisha Gillum's murder, largely because no one involved with the gang would speak out.

The matter was put into the hands of the FBI Drug Task Force. It spent several years developing a case against the Crips leadership, including "Rico" Williams and his brother, Greg Hymes. In 2001, Williams, Hymes, and another gang leader were indicted on federal drug trafficking charges, including a decade-long cocaine-trafficking conspiracy. Upon arrest, "Rico" Williams agreed to cooperate with law enforcement, and identified the shooters in the Davisha Gillum murder as Crenshaw, McGruder, and Johnson, and the driver as Harut. Upon apprehension, Harut admitted driving the car, and confirmed the shooters' identities.

Defendants Crenshaw, McGruder, and Johnson were indicted for aiding and abetting murder in aid of racketeering activity, a violation of 18 U.S.C. §§ 2 and 1959. At trial, five witnesses testified to the identity of the shooters, as did two others who heard defendants bragging about the murder. The government presented unrebutted evidence showing the Crips to be a racketeering enterprise under the statute, and that defendants' acts were motivated by a desire to enter the gang or maintain or increase their position within it.

The jury found all three defendants guilty of the charge. Each was sentenced to life in prison. The Eighth Circuit Court of Appeals affirmed Mr. Crenshaw's conviction and sentence. <u>United States v. Crenshaw</u>, 359 F.3d 977, 1005 (8th Cir. 2004). Mr. Crenshaw timely filed this petition.

II. <u>Analysis</u>

Mr. Crenshaw claims the evidence was insufficient to convict him, because the government failed to prove he acted with the requisite motive. He further claims he was denied the opportunity to confront a witness, and that his trial attorneys were ineffective for failing to challenge what he believes was false evidence. Each of his arguments is without merit.[1]

A. <u>Sufficient Evidence of Motive</u>

Mr. Crenshaw argues that the evidence presented at trial was insufficient to show he acted with the motive to gain entrance to, or to maintain or increase his position in, the Rolling 60s Crips gang. Mr. Crenshaw raised this precise issue on direct appeal and lost, <u>see</u> <u>Crenshaw</u>, 359 F.3d at 995-996. This point is beyond the Court's review.

Even considering the issue, however, the Court is well-satisfied that the evidence was more than sufficient to allow a jury to find the requisite motive. Mr. Crenshaw incorrectly suggests the government had to prove he was actually a member of the Rolling 60s Crips, or was personally involved in their

---

[1] The Court is mindful that a petition under 28 U.S.C. § 2255 is not a substitute for direct appeal. <u>Reid v. United States</u>, 976 F.2d 446, 447 (8th Cir. 1992). Accordingly, the Court may consider neither matters actually raised on direct appeal, <u>see</u> <u>English v. United States</u>, 998 F.2d 609, 612-13 (8th Cir. 1993), nor matters which could have been raised on direct appeal, absent a showing of cause and substantial, actual prejudice. <u>Ford v. United States</u>, 983 F.2d 897, 898-99 (8th Cir. 1992) (per curiam).

racketeering activity at the time of the shooting. Yet the statute covers those who commit murder for the purpose of getting into a gang that commits racketeering activity, or one who seeks to maintain or increase his position in such a gang. 18 U.S.C. § 1959(a); Crenshaw, 359 F.3d at 992.

The evidence at trial was sufficient to allow the jury to infer that Mr. Crenshaw committed the murder to gain admission to the Rolling 60s Crips. He had previously belonged to the "187" and "ABK" gangs. On his release from prison, and shortly before the murder, he spent time with Mr. Sanders and other members of the Rolling 60s Crips. The evidence showed Mr. Crenshaw targeted members of the Bogus Boys, whom Crips' leadership had ordered shot on sight. After the shooting, Mr. Crenshaw bragged to the gang's leadership and other members about shooting at the Bogus Boys to ensure he would get credit for the activity. It is certainly no defense that Mr. Crenshaw and his codefendants missed killing Bogus Boys while actually killing an innocent victim; their intent transfers to the actual victim. United States v. Concepcion, 983 F.2d 369, 381-82 (2d Cir. 1992). As the Eighth Circuit held, this evidence was fully sufficient to establish the requisite motive. Crenshaw, 359 F.3d at 995-96.

B. Right to Confrontation

Mr. Crenshaw claims his attorney was ineffective for failing to call Roosevelt Sanders as a witness, thereby depriving him of

his Sixth Amendment right to confrontation.  He also claims his appellate counsel should have raised the point on appeal.  Issues relating to Mr. Crenshaw's Sixth Amendment rights could have been raised on direct appeal, and, therefore, may not be raised in a petition under Section 2255 absent a showing of substantial, actual prejudice.  <u>Ford</u>, 983 F.2d at 898-99.  Mr. Crenshaw has made no such showing.

His Sixth Amendment claim would fail on the merits even if properly before the Court.  A defendant has the right to confront any witness who testifies against him.  <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 54 (2004).  Testimonial statements of a witness absent from trial are admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.  <u>Id.</u> at 59.

Here, the government did not introduce <u>any</u> of Roosevelt Sanders' statements; it merely showed that he was a member of the Crips, and that he and Mr. Crenshaw had been incarcerated together not long before the murder.  While this evidence supported an inference that Mr. Sanders recruited Mr. Crenshaw to join the Crips, Mr. Sanders never testified at trial.  In the absence of Sanders' testimony, there was no violation of the right to confrontation.

Mr. Crenshaw next argues his lawyers were ineffective in not calling Mr. Sanders to testify.  Mr. Crenshaw now says Mr. Sanders

6

would have testified that he and Mr. Crenshaw "had no relationship that would have allowed a jury to conclude or infer that [Crenshaw] had a [sic] economic tie to the Rolling 60s Crips . . . ." (Petition at 17.)  Mr. Crenshaw offers no affidavit or other evidence in support thereof, without which his claim must fail. Unsupported assertions that a witness would have exculpated a defendant are insufficient to prove ineffectiveness, and do not even require an evidentiary hearing.  See Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

 To prevail on a claim of ineffective assistance of counsel, Mr. Crenshaw must show both that his counsel's performance was deficient and that he suffered actual prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Here, he has shown neither; his Sixth Amendment issue is meritless. Accordingly, this claim is denied.

   C.  Fraud on the Court

 At trial, prison records were admitted showing Mr. Sanders' and Mr. Crenshaw's joint incarceration at the Minnesota Correctional Facility at Faribault.  This evidence was uncontradicted.  Until his current response to the government's reply to this petition, Mr. Crenshaw has never denied he was incarcerated with Mr. Sanders at Faribault.  [Docket No. 211, Movant's Reply at 8.]  He now claims the evidence was false, and that, in fact, Mr. Sanders was incarcerated at a different facility

7

in Lino Lakes.

He supports this recent theory by offering Exhibit A to his petition, an unsworn email apparently from a private investigator purporting to show that Mr. Sanders was in custody at Lino Lakes in August, 1995, and released on June 17, 1996. If credited, this document suggests Mr. Sanders served his entire sentence at Lino Lakes. This impression is false.

The official records introduced at trial show Mr. Sanders was transferred first to Stillwater, and then to Faribault, where Mr. Crenshaw was serving his sentence, prior to his return to Lino Lakes. Exhibit A simply omits these transfers.

As Mr. Crenshaw has submitted no official records to contradict the government's evidence, nor other evidence to support his claim of falsity, this claim is insufficient, and is accordingly denied.

The Court has considered whether issuance of a Certificate of Appealability ("COA") is appropriate. See Tiedman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). In that context, the Court concludes that no issue raised in this petition is "debatable among reasonable jurists." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citation omitted). Petitioner has not made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

III.  <u>Conclusion</u>

    For these reasons, Mr. Crenshaw's petition under 28 U.S.C. § 2255 [Docket No. 202] is denied.  No Certificate of Appealability shall issue.

    IT IS SO ORDERED.

Dated:  August 2, 2005

                                  <u>s/James M. Rosenbaum</u>
                                  JAMES M. ROSENBAUM
                                  United States Chief District Judge